**In re Deborah MANGANO, Debtor.**

**No. 00–50449 (SAS).**

United States Bankruptcy Court, D. New Jersey.

Sept. 25, 2000.

---

Peter Zimnis, Trenton, NJ, for the debtor.

Rhondi L. Schwartz, Shapiro & Kreisman, Marlton, NJ, for Homeside Lending Inc., as Servicer for Federal National Mortgage Assoc.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by Homeside Lending Inc. (hereinafter "Homeside") for relief from the automatic stay and for prospective relief so that Homeside can commence eviction proceedings against the debtor. Deborah Mangano (hereinafter the "debtor") opposes the motion. The principal issue on this motion is whether acceptance of postpetition mortgage payments by the mortgagee constitutes waiver of the mortgagee's right to relief from the automatic stay. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). This shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

The relevant facts are not in dispute. On June 10, 1993 the debtor executed and delivered to Meridian Mortgage Corp. a note in the principal sum of $119,600 which was secured by a mortgage on the debtor's primary residence at 3 Manchester Way, Burlington, New Jersey (hereinafter the "property"). On June 24, 1994, Meridian Mortgage Corp. assigned the note and mortgage to BancBoston Mortgage Corp., which then executed an assignment of same to Federal National Mortgage Association (hereinafter "FNMA") on December 14, 1998. However, BancBoston Mortgage Corp., d/b/a Homeside, continued to service the mortgage on behalf of FNMA. The debtor defaulted on the mortgage in the latter half of 1998, and Homeside initiated foreclosure proceedings against the debtor and the property in the Superior Court of New Jersey (hereinafter the "superior court"). On February 24, 1999, the superior court entered a judgment of foreclosure, and a sheriff's sale was scheduled for May 6, 1999. On April 20, 1999 the debtor filed her first petition for relief under chapter 13 of title 11, United States Code (the Bankruptcy Code) and therefore prevented the sale from occurring. The debtor's first case was dismissed, however, on September 22, 1999.

Following dismissal of that case, Homeside scheduled a sheriff's sale for a second time. That sale was conducted on January 6, 2000. Homeside was the successful bidder at the sale. On January 14, 2000, the debtor filed another petition for relief under chapter 13, commencing this bankruptcy case. Upon notification of the pending bankruptcy case, Homeside stayed all foreclosure and eviction proceedings in the superior court. The debtor failed to redeem the property, however, within the time allotted by state and federal law after the sheriff's sale and filing of the bankruptcy petition. Instead, the debtor filed a chapter 13 plan which proposed to cure the arrearages and to maintain payments on the mortgage to Homeside. After this petition was filed and during the 60-day extended redemption period under Bankruptcy Code section 108(b), the debtor made, and Homeside accepted, two postpetition mortgage payments for the property. Homeside, however, refused to accept any mortgage payments beyond the initial two from the debtor. On March 16, 2000 Homeside filed the instant motion seeking relief from the automatic stay under Bankruptcy Code section 362(d) and for pro-

spective relief so that it can commence eviction proceedings against the debtor.

### Homeside's Position

Homeside argues that the court should grant it relief from the automatic stay because it did not waive its right to relief by accepting postpetition mortgage payments from the debtor. First, Homeside argues that it did not waive its rights because it did not know that it had the right to refuse payments from the debtor. Thus, Homeside contends that it could not intentionally waive a right of which it had no knowledge. Next, Homeside argues that no waiver occurred because the acceptance of partial payments are immunized by N.J.Stat.Ann. 2A:50–67, which permits a debtor to tender, and a lender to accept, partial payments without either party waiving any rights.

Homeside also argues that *In re Little*, 201 B.R. 98 (Bankr.D.N.J.1996), *aff'd in part and remanded in part*, No. 97–1146, (D.N.J. July 7, 1998), *aff'd*, 159 F.3d 1352 (3d Cir.1998) (unpublished table decision), compels the conclusion that no waiver occurred. Specifically, Homeside maintains that since the facts in *In re Little* did not constitute waiver, such a finding was required in the instant case. Homeside explains that in the *Little* case the mortgagee filed a proof of claim and provided mortgage payment coupons for use by the debtor during the pendency of the bankruptcy. Homeside contends that since those facts are absent form this case, this court should enter a similar finding that no waiver has occurred.

Finally, although not explicitly argued, Homeside implies that it is entitled to relief because neither the debtor nor the bankruptcy estate has any legal or equitable interest in the property. Homeside supports this implication by reference to the fact that the property was sold to Homeside at the sheriff's sale, and that the debtor has since failed to redeem the property within the time allowed by law.

### The Debtor's Position

The debtor argues that Homeside waived its right to relief when it accepted postpetition mortgage payments from the debtor. The debtor argues that Homeside's waiver should result in the reinstatement of the mortgage, deceleration of the note and the ability of the debtor to cure all defaults and arrearages by way of a chapter 13 plan. The debtor rests her argument entirely upon the district court decision in *In re Little, supra*, which in turn relied upon *In re Parks*, 193 B.R. 361 (Bankr.N.D.Ala.1995) for the proposition that acceptance of postpetition mortgage payments constitutes a waiver of a mortgagee's right to relief.

### CONCLUSIONS OF LAW

#### I.

Homeside argues that no waiver occurred because the acceptance of partial payments are immunized by N.J.Stat.Ann. 2A:50–67. That section, which was enacted as part of the Fair Foreclosure Act of 1995, states:

> In the absence of an express agreement between the parties to the contrary, a debtor may tender, and a lender may accept, partial payment of any sum owing and due without either party waiving any rights.

In this case, there was no "express agreement between the parties to the contrary" within the meaning of that section. Homeside never told the debtor, in other words, that it was waiving the rights it acquired by purchasing the property at the foreclosure sale. The debtor's argument is that the acceptance of the two postpetition payments was an implied waiver. N.J.Stat. Ann. 2A:50–67 expressly precludes the debtor's argument of implied waiver, however. Homeside is therefore correct that its acceptance of those payments was not a waiver of any rights.

## II.

Because N.J.Stat.Ann. 2A:50–67 bars any argument of implied waiver in this case, it is not necessary to address the elements of the doctrine of waiver here. The court notes, however, that on these facts there would be no waiver even if N.J.Stat.Ann. 2A:50–67 did not apply.

In *In re Veltre*, No. 99–40669 (Bankr. D.N.J. May 31, 2000), the court considered a case substantially identical to the case at bar. In that case, the court held that a mortgagee who accepted two postpetition mortgage payments during the 60-day extension of the state law redemption period had not waived its right to relief from the automatic stay. *See In re Veltre*, No. 99–40669, slip op. at 6 (Bankr.D.N.J. May 31, 2000). Moreover, the court held that the mortgage was not capable of reinstatement, deceleration or cure under § 1322. *See id.* at 3.

The facts of *Veltre* were simple. The debtor defaulted on her mortgage and on June 30, 1999, a judgment of foreclosure was entered against the debtor and her property. Then, on September 20, 1999, a sheriff's sale was conducted at which time the mortgagee purchased the property. On September 29, 1999 the debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. That petition was filed just one day prior to the expiration of the 10-day period within which the debtor had to redeem the property. However, by virtue of the bankruptcy filing and section 108(b) of the Bankruptcy Code, the debtor was granted an additional 60 days within which to redeem the property. During that 60-day period, the debtor made two mortgage payments to the mortgagee, which accepted and credited both payments to the debtor's account. However, the debtor did nothing else during that period to redeem the property. On January 18, 2000 the mortgagee moved for relief from the automatic stay so that it could continue with its foreclosure efforts.

The *Veltre* court reasoned that the debtor's reliance on the district court's opinion in *In re Little* and *In re Parks* for the proposition that the mortgagee waived its right to relief because it accepted two postpetition mortgage payments was "misplaced" and "inappropriate." *See In re Veltre*, No. 99–40669, slip op. at 4–5. The court identified two reasons why *In re Little* did not support the debtor's argument. First and foremost, the *Veltre* court correctly noted that the *Little* case did not "not resolve the issue of whether a secured creditors acceptance of monthly mortgage payments constitutes waiver of the secured creditors right[s] . . ." *Id.* at 4. Instead, the *Little* court remanded that issue for a hearing. Second, the *Veltre* court reasoned that several important distinguishing facts existed in *Little* which did not exist in *Veltre* : (1) the mortgagee filed a proof of claim for the arrears and for the reinstatement of the mortgage; and (2) the mortgagee provided to the debtor monthly payment coupons with which to pay the mortgage during the pendency of the bankruptcy case. *See id.* Accordingly, since the debtor overlooked these facts, application of *Little* was "strained." *See id.*

The *Veltre* court also reasoned that the debtor's reliance on *In re Parks* was misplaced. *See In re Veltre*, No. 99–40669, slip op. at 5. In *Parks*, the court found that the mortgagee waived its right to relief because it recognized a post-foreclosure relationship with the debtor by accepting post-foreclosure payments. According to the *Veltre* court, reliance on *Parks* was "inappropriate" because the facts present in *Parks* but absent in *Veltre* were that: (1) the debtor retained equity in the property; (2) the mortgagee filed a proof of claim; and (3) cause to set aside the underlying foreclosure judgment may have existed. *See id.*

The *Veltre* court noted that waiver is the intentional relinquishment of a known right, and when it involves a statutory right, a waiver must be "clear and unmistakable." *See In re Veltre*, No. 99–40669, slip. op. at 5; (*citing Paradise Hotel v.*

*Bank of Nova Scotia*, 842 F.2d 47, 51 (3d Cir.1988); *Central Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1109 (3d Cir.1996); *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir.1987)). According to the court, nothing about the acceptance of two postpetition mortgage payments evidenced a "clear and unmistakable" waiver by the mortgagee of its right to relief from the stay. *See id.; (citing Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983); *In re Ziyambe*, 200 B.R. 790, 799 (Bankr.D.N.J. 1996)).

■ Waiver can be established "by conduct that is inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right." *See Evcco, supra.* When waiver of the right to relief from the automatic stay of Code section 362(a) is at issue, "implied waiver is generally not found unless the creditor takes some action which is inherently inconsistent" with its right to relief. *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 698 (3d Cir.1989) *(citing Borg–Warner Accept. Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re McNeely*, 51 B.R. 816, 821 (Bankr.D.Utah 1985); *In re Small*, 38 B.R. 143, 147 (Bankr.D.Md.1984); and *In re Wilmette Partners*, 34 B.R. 958, 961 (Bankr.N.D.Ill. 1983)).

The *Veltre* court did not consider the application of N.J.Stat.Ann. 2A:50–67 to the facts of that case. Application of the *Veltre* decision to the instant case demonstrates, however, that even if that statute did not apply, Homeside's acceptance of postpetition mortgage payments did not constitute a waiver of its rights. Homeside never filed a proof of claim, which would have suggested that the mortgage could be reinstated, nor provided special payment coupons to the debtor for use

while her petition was pending. Aside from acceptance of two postpetition mortgage payments from the debtor, Homeside did not engage in any form of conduct which was arguably "inherently inconsistent" with its right to obtain relief from the stay. Indeed, that Homeside filed the subject motion on March 21, 2000, approximately two months after the petition was filed and within a week after the debtor's right to redeem the property under Code section 108(b) expired, constitutes a clear indication of its intent not to waive that right. In sum, the doctrine of waiver does not apply, and Homeside is entitled to relief from the automatic stay.

### III.

Homeside also argues that the court should grant it relief from the automatic stay because neither the debtor nor the debtor's bankruptcy estate had a legal or equitable interest in the property when the petition was filed. The court agrees with Homeside.

■ A debtor's right to reinstate a mortgage in a chapter 13 case is based upon the debtor's interest in the property as defined by state law. *See In re Nimai Kumar Ghosh*, 38 B.R. 600, 603 (Bankr. E.D.N.Y.), *appeal dismissed*, 47 B.R. 374 (1984) *(citing Matter of Valente*, 34 B.R. 804 (Bankr.D.Conn.1982)). Under New Jersey law, the only way in which a debtor can cure a default after foreclosure sale is through redemption[1]. *See In re Hric*, 208 B.R. 21, 25 (Bankr.D.N.J.1997). Applicable New Jersey law allows debtors 10 days within which to redeem property after it has been sold at a foreclosure sale. *See N.J.Stat.Ann.* 2A:50–1 *et seq.; N.J. Rules of Court, R. 4:65–5, see also In re Ziyambe*, 200 B.R. at 795. By operation of Bankruptcy Code section 108(b), the state law redemption period is extended an additional 60 days from the date of the filing of a

---

1. Under New Jersey law, redemption is effectuated by the payment in full of the mortgage indebtedness, plus costs of the foreclosure proceeding and costs of the sale. *See Little*, 201 B.R. at 105; *(citing Lobsenz v. Micucci Holdings, Inc.*, 127 N.J.Super. 50, 51, 316 A.2d 59 (App.Div.1974)).

bankruptcy petition. *See In re Hric,* 208 B.R. at 25; *see also In re Little,* 201 B.R. at 105. If, however, a debtor fails to exercise his or her statutory right of redemption, he or she loses all title, right and interest in the property. *See In re Hric,* 208 B.R. at 26, *see also Little,* 201. At that point it is too late for the debtor to cure arrearages, under a chapter 13 plan[2]. *Id.; see also In re Hric,* 208 B.R. at 25–26.

On February 24, 1999, Homeside obtained a judgment of foreclosure against the debtor. In connection therewith, the debtor's property was sold at a sheriff's sale on January 6, 2000. Pursuant to state law, the debtor had until January 16, 2000, or 10 days from the sheriff's sale, within which to object and redeem the property. The debtor, however, failed to exercise that right. Instead, on January 14, 2000 the debtor filed a chapter 13 petition, and thereby extended the redemption period an additional 60 days. When the 60-day redemption period expired, the debtor had not yet exercised her right to redeem the property. As a result of that failure, therefore, the debtor has lost all title, right and interest in the property. Accordingly, the court finds that there is cause under Code section 362(d) to grant Homeside relief from the automatic stay.

## IV.

 Finally, Homeside has also requested prospective relief from the automatic stay in the event of any future bankruptcy filings by the debtor. In light of the holding set forth above, it would be an abuse of the bankruptcy process to delay or frustrate any further Homeside's rights by any future bankruptcy filings. Under

such circumstances, prospective relief from the automatic stay is granted. *See In re Hric,* 208 B.R. 21, 26 *(citing In re Jones,* 105 B.R. 1007 (N.D.Ala.1989); *In re Abdul–Hasan,* 104 B.R. 263 (Bankr.C.D.Cal. 1989)).

## V.

The court in *Veltre* ordered Ocwen to return the two postpetition payments to the debtor, without any explanation as to why. The debtor in this case has not requested the return of the postpetition payments, and it is by no means clear that she would have been entitled to such relief. If the debtor had redeemed the property under Code section 108(b), the postpetition payments would presumably have been credited toward the amount due on the foreclosure judgment. Since the debtor did not redeem the property, however, the debtor's retention of possession during the redemption period was an economic benefit to the debtor at Homeside's expense. The debtor was basically a tenant at sufferance of Homeside during that period. Since the parties have not raised any issue as to the return of those payments, no ruling is made on it.

## CONCLUSION

For the foregoing reasons, the court finds that Homeside did not waive its right to relief from the automatic stay. Thus, Homeside's motion for relief from the automatic stay and for prospective relief is granted.

---

2. Bankruptcy Code section 1322, which governs a debtor's right to cure mortgage arrears under a chapter 13 plan, provides in pertinent part that "... a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law ..." This court is of the opinion that "the phrase 'sold at a foreclosure sale' in Code § 1322(c)(1) refers to the auction itself, and that the debtor has no right

thereafter to cure a default under that section." *See In re Hric,* 208 B.R. at 26, *see also Ziyambe,* 200 B.R. at 799–800 (a debtor has only up until prior to a foreclosure sale to cure defaults under a Chapter 13 plan); *but see In re Ross,* 191 B.R. 615, 621 (Bankr. D.N.J.1996); *see also In re Downing,* 212 B.R. 459, 463 (Bankr.D.N.J.1997) (debtor's right to cure default is cut off only by the delivery of the sheriff's deed).