**In re Crystal Kaletta HOWARD a/k/a Crystal Howard Askew, Debtor.**

**USA Title Pawn, Movant,**

**Crystal Howard Askew and Adam Goodman, as Trustee, Respondents.**

**No. 13–65741.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed March 13, 2014.

Entered March 14, 2014.

Craig Z. Black, Robert J. Semrad and Associates, Atlanta, GA, for Debtor.

Adam M. Goodman, Chapter 13 Trustee, Atlanta, GA, Trustee.

## ORDER

JAMES R. SACCA, Bankruptcy Judge.

Can an order confirming a Chapter 13 plan treating a pawn transaction as a secured claim bind the pawn broker where the redemption period had expired pre-petition, but where the Debtor had physical possession of the goods on the petition date? This issue is before the Court on USA Title Pawn's ("USA Title") Motion to Terminate Automatic Stay (the "Motion"), filed on January 1, 2014 [Doc. No. 30]. The matter came on for hearing on February 20, 2014. In addition to the Motion and arguments of counsel, the Court has considered USA Title's "Supplemental Citation of Authority in Support of Motion for Relief from Stay" [Doc. No. 35] and all other matters of record.

In the Motion, USA Title asks the Court for permission to take possession of two motor vehicles currently in the physical possession of the Debtor. USA Title claims these vehicles are neither the property of the Debtor nor the property of the Debtor's estate. The Debtor contends otherwise and asserts that USA Title is bound by the terms of her confirmed Chapter 13 plan. Accordingly, the Court must determine the parties' respective interests in the vehicles and the effect of the confirmation of the plan.

## Background

The facts here are not in dispute. The Debtor executed two separate pawn contracts with USA Title involving two motor vehicles. Under the first pawn contract, dated June 25, 2012, USA Title received a security interest in Debtor's 2006 Suzuki Aeris (the "Suzuki") in exchange for a $1,856.18 cash loan to the Debtor. Under the second pawn contract, dated August 3, 2012, USA Title received a security interest in the Debtor's 1999 Chevrolet Tahoe (the "Chevrolet") in exchange for a $1,803.84 cash loan to the Debtor.

The Debtor did not make the payments as required by the pawn contracts. The Suzuki contract was in default on April 23, 2013 and the grace period within which to redeem the vehicle expired on May 23, 2013. The Chevrolet contract was in default on June 4, 2013 and the grace period within which to redeem that vehicle expired on July 5, 2013. There was no extension of the redemption period nor did the Debtor redeem either vehicle. The Debtor did not file her Chapter 13 case until July 19, 2013. She listed USA Title as a creditor on her mailing matrix and on her schedule of creditors holding secured claims. She also proposed a plan which provided for USA Title to be treated as the holder of claims to which a § 506 valuation is applicable.[1] Although USA

---

1. The confirmed plan does not attempt to redeem the vehicles nor does it otherwise propose to pay USA Title in full, but rather

values the vehicles at no more than $425 each, which amount would be paid over time at 4.25%. The plan also provides that unse-

Title did receive notice of the case and the proposed treatment in the plan, USA Title did not object to the plan, nor did it file a claim in the case. The plan was confirmed on November 8, 2013 [Doc. No. 22].

### The Parties' Respective Interests in the Vehicles

 Pursuant to 11 U.S.C. § 541, upon the filing of a voluntary petition by a debtor, an estate is created which comprises "all legal or equitable interests of the debtor in property" at that time. Property of the estate includes, among other things, tangible property that a debtor owns subject to a lien or security interest. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Whether a debtor has a legal or equitable interest in property at the commencement of a bankruptcy case is determined by reference to state law. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Georgia law applicable to this case is found in three sections of the Official Code of Georgia Annotated: O.C.G.A. § 44–12–130, O.C.G.A. § 44–12–131 and O.C.G.A. § 44–14–403.

O.C.G.A. § 44–12–130 defines a "pawn transaction" as "any loan on the security of pledged goods or any purchase of pledged goods on the condition that the pledged goods may be redeemed or repurchased by the pledgor or seller for a fixed price within a fixed period of time." Although a pledged good [2] customarily requires the creditor to have control of the property, the Georgia Code permits a borrower to pledge a motor vehicle by providing that the pawnbroker's possession of the vehicle's certificate of title is "conclusively

deemed to be possession of the motor vehicle." O.C.G.A. § 44–12–130(5). In this matter, both vehicles were pledged goods, as the Debtor delivered both vehicles' certificates of title to USA Title in exchange for cash loans. The loans were made with conditions that the Debtor may redeem the vehicles for a fixed price within a fixed period of time; thus both transactions were pawn transactions within the meaning of O.C.G.A. § 44–12–130.

O.C.G.A. § 44–12–131 requires specific provisions in a pawn transaction. This section provides that all pawn transactions must be for at least a thirty-day period but may be continued or extended for additional thirty-day periods by written agreement of the parties. O.C.G.A. § 44–12–131(a)(1). If the pledgor—who retains physical possession and use of the motor vehicle—defaults in making the contracted payments, the lender may then repossess the vehicle itself. O.C.G.A. § 44–12–131(a)(3).

 If the parties do not agree to extend or continue the pawn transaction and the borrower does not pay the principal, interest, and charges in full to redeem the pawned property by the maturity date (as may be extended), the borrower has an additional grace period of thirty days—in the case of motor vehicles—to redeem the pawned property. O.C.G.A. § 44–14–403(b)(1), (2). To redeem such property, the borrower must pay the principal, interest, and other charges due on the maturity date plus an additional interest charge of up to 12.5 percent of the principal. O.C.G.A. § 44–14–403(b)(3). If the vehicle is not timely redeemed, O.C.G.A. § 44–14–

---

cured creditors will receive less than payment in full.

**2.** O.C.G.A. § 44–12–130 defines a pledged good as "tangible personal property, including, without limitation, all types of motor

vehicles or any motor vehicle certificate of title, which property is purchased by, deposited with, or otherwise actually delivered into the possession of a pawnbroker in connection with a pawn transaction."

403(b)(3) provides: "Pledged goods not redeemed within the grace period shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item." However, if a debtor files for bankruptcy protection while he or she still has a right to redeem the property, then that right of redemption becomes property of the debtor's estate. *Oglesby v. Title Max (In re Oglesby)*, 2001 WL 34047880 (Bankr.S.D.Ga. 2001); *see also Bell v. Instant Car Title Loans (In re Bell)*, 279 B.R. 890, 896–97 (Bankr.N.D.Ga.2002).

■ Under Georgia law, the rights of a pawnbroker in pawned property are different from the rights that the holder of a security interest generally has in encumbered property, largely because of the automatic entitlement to full ownership of pawned property that a pawnbroker has when the pledgor does not timely redeem the property. *In re Moore*, 448 B.R. 93, 100 (Bankr.N.D.Ga.2011).

■ Because the Debtor did not pay the outstanding principal, interest, or other charges due on the maturity dates of the contracts and because the Debtor did not redeem the vehicles prior to filing for bankruptcy protection, the vehicles are not included in "property of the estate." The pawn contracts terminated and USA Title became the owner of the vehicles as a result of the statutorily mandated forfeiture prior to the commencement of this case. O.C.G.A. § 44–14–403(b)(3); *In re Bell*, 279 B.R. at 896–97 (holding debtor no longer had an interest in pawned motor vehicle on date her bankruptcy petition was filed, after expiration of 30–day grace period for redeeming the vehicle).

Debtor relies on *In re Bell* for the proposition that Georgia law requires the repossession of a pawned vehicle as a necessary precondition for extinguishment of a debtor's interest in a vehicle that was pledged in a pawn transaction. Although the pawnbroker in *Bell* repossessed the Debtor's motor vehicle after the grace period for redemption expired, but before the petition was filed, that fact was simply a matter of record, and nothing in that court's opinion suggests that repossession of a pawned vehicle is a necessary precondition for termination of a debtor's interest in the vehicle. To the contrary, pursuant to O.C.G.A. § 44–12–130(5), a pawnbroker's possession of a certificate of title, as USA Title retained in this case, "shall be conclusively deemed to be possession of the motor vehicle." Furthermore, Georgia courts have held that once the tolling period expires without redemption, extinguishment occurs regardless of whether the vehicle was repossessed. *In re Moore*, 448 B.R. at 101. The same conclusion was reached in connection with a similar Alabama law in *In re Jones*, 304 B.R. at 468.

### Effect of the Chapter 13 Plan Confirmation

■ The Debtor maintains that confirmation of her Chapter 13 plan, which listed the Suzuki and Chevrolet as collateral for claims to which valuation under § 506 valuation was applicable, binds USA Title to its provisions and revives the Debtor's title to both motor vehicles.

■ The Court disagrees. While there is "a strong presumption in favor of the finality of confirmation orders," *Deutsche Bank National Trust Company v. Thompson (In re Thompson)*, 499 B.R. 908, 911 (Bankr.S.D.Ga.2013) (punctuation and citation omitted), a debtor "succeeds to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition is filed." *In re Dunlap*, 158 B.R. 724, 727 (M.D.Tenn.1993) (internal quotes and citation omitted). Bank-

ruptcy courts have also held that a "Chapter 13 plan may not provide for disposition of property which is not property of the estate as defined in 11 U.S.C. § 541" and the "fact of plan confirmation cannot bind a property owner to a plan provision disposing of his property rights when such property is not within the Court's vested jurisdiction." *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126, 131 (Bankr.N.D.Ohio 1994) (internal quotes and citation omitted).

Cases dealing with this issue have held that § 1322(b)(2)—which authorizes a debtor to modify the rights of certain holders of secured claims in a Chapter 13 plan—cannot be used to restructure the claims of a pawnbroker after the expiration of the redemption period. In the case of *In re Dunlap* for example, the district court held that the debtors had lost all of their interest in the pawned property once the redemption period expired. *In re Dunlap*, 158 B.R. at 727. Upon expiration of the statutory redemption period without the pawned goods having been redeemed, "the debtor forfeits 'all right, title and interest of, in and to the pledged property and the debt becomes satisfied.'" *Id.* (*quoting* the Tennessee Code, which is similar to the relevant Georgia Code provisions here). The court concluded that a debtor cannot cure or modify the pawn contract under § 1322 after the redemption period has expired because this remedy only applies to goods in which the estate retains an interest. *Id.*

Likewise, in *Geddes v. Mayhall Enterprises, LLC*, the bankruptcy court held that the debtors no longer had any interest in a pawned automobile because, as of the petition date, the pawn contract had matured and the debtor's statutory right of redemption had expired. *Geddes v. Mayhall Enter., LLC (In re Jones)*, 304 B.R. 462 (Bankr.N.D.Ala.2003); [3] *see also In re Walker*, 204 B.R. 812 (Bankr.M.D.Fla. 1997) (dealing with a post-petition, pre-confirmation expiration of the redemption period) and *In re Jackson*, 2007 WL 954751 (Bankr.E.D.Tenn.2007) (involving Georgia pawn shop statute, finding that pawn shop would not have been bound by terms of confirmed plan had it not filed a proof of claim, after confirmation, which amounted to acceptance of the terms of the plan).

Similarly, the Eleventh Circuit in *Commercial Federal Mortgage Corporation v. Smith*, applying Alabama real estate foreclosure law, held that § 1322 allows modifications only to the extent that there exists something to modify and that once the debtors' claim to title is extinguished at a foreclosure sale, § 1322(b) is no longer available to the debtor. *Commercial Fed. Mortg. Corp. v. Smith (In re Smith)*, 85 F.3d 1555, 1559 (11th Cir.1996), Also, it has been held that a lessor may not be bound by the terms of a confirmed Chapter 13 plan providing for the assumption and cure of a vehicle lease when the lease had been terminated pre-petition. *In re Estep*, 173 B.R. at 131.

Here, the Debtor's obligation fully matured and she defaulted on payment and failed to redeem the Suzuki and the Chevrolet within the Georgia Code's grace period, so USA Title became the effective owner of the vehicles prior to the filing of this case as a result of the statutory automatic forfeiture provision, and they ceased to be the Debtor's property. Had the debtor filed bankruptcy before her right to redeem expired, she would have been permitted to cure her default and keep the vehicles; but her right of redemption ex-

---

3. The Alabama forfeiture statute mirrors the Georgia forfeiture statute in that both provide for the forfeiture of the pledgor's ownership interest to the pawnbroker if the pledged goods are not redeemed within the grace period. *In re Jones,* 304 B.R. at 469.

pired pre-petition, so at that point she no longer had a right to cure her default under the Bankruptcy Code.

True enough, the confirmed Chapter 13 plan treats the two vehicles as property of the Debtor and the obligation related thereto as a debt that can be restructured, but this fact is irrelevant when, as here, the vehicles did not become property of the estate upon the filing of Debtor's petition, and therefore they were not property within the Court's vested jurisdiction. *In re Estep,* 173 B.R. at 131; *Winters Nat. Bank & Trust Co. of Dayton v. Simpson,* 26 B.R. 351, 354 (Bankr.S.D.Ohio 1982).

For the very same reasons that a former mortgage-holder is not bound to the terms of a confirmed Chapter 13 plan providing for the cure of a lawfully foreclosed mortgage [4] and a former lessor is not bound to the terms of a confirmed plan assuming and curing a terminated lease, the Debtor's Chapter 13 plan cannot bring property into her bankruptcy estate that was not her property as of the petition date. Even though the Debtor continued to possess the vehicles on the petition date, she no longer held legal title to them. Her equity of redemption had expired, thus she had no rights left in the property and she therefore no longer has any right to cure her default.

### Conclusion

Based on the forgoing, it is hereby

ORDERED that USA Title's Motion is GRANTED, and the automatic stay is modified to allow USA Title to exercise its state law rights and remedies to obtain possession of the vehicles.

---

**4.** *See In re Comer,* 2014 WL 917485 (Bankr. E.D.Tenn.2014); *In re Toney,* 349 B.R. 516 (Bankr.E.D.Tenn.2006); *In re Mangano,* 253 B.R. 339 (Bankr.D.N.J.2000); *In re Jauregui,* 197 B.R. 673 (Bankr.E.D.Cal.1996); and *Simpson,* 26 B.R. at 354.